# IN THE MATTER OF THE ESTATE OF ANTONE PHILLIPS.

## APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 5, 1899.　　　DECIDED DECEMBER 20, 1899.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY, IN PLACE OF JUDD, C.J., ABSENT.

By the will of A. P. property was left to M. for life with remainder to J. A. and others. The administrator with will annexed transferred the property to an attorney of M. the life tenant, but this was done out of court and without any order of the court and there was no settlement of his accounts in court. M. the life tenant died and the remaindermen claim the estate of the administrator. The question raised is one of fact, "Did the administrator pay over the funds belonging to t... estate to the attorney of the life tenant at the request of or with the subsequent knowledge and approval of the remaindermen?"

Held, on the evidence, that no direct authority appeared for the trans-
fer and also that the evidence did not prove a ratification by the
remaindermen of the settlement between administrator and life
tenant.

OPINION OF THE COURT BY WHITING, J.

This is an appeal from the decree of the Circuit Court, First
Circuit, in probate ordering the appellant A. S. Cleghorn to pay
into court certain moneys claimed to be due from him as adminis-
trator with will annexed of the estate of Antone Phillips.

By the will of Antone Phillips, property was left to Ana Mo-
mona for life with remainder to four persons among whom were
John and Antone Nicholas Ana. A. S. Cleghorn was adminis-
trator with will annexed until September, 1886, he transferred
the property to W. R. Castle the attorney of Ana Momona, but
this was done out of court, without any order of court, and there
was no settlement of his accounts in court. Ana Momona is
dead, also one of the remaindermen who died before the transfer
to Castle. Part of the remaindermen now seek to have Cleghorn
account for the estate and property.

The question in controversy is one of fact, "Did Cleghorn
pay over the funds belonging to the estate to Castle at the request
or with the subsequent knowledge and approval of the peti-
tioner?"

We have made a careful examination of the evidence and we
arrive at the same conclusions as the circuit court set forth in
the decision of Stanley, J., which is as follows:

"On June 1st, 1898, John Nicholas Ana and Antone Nicholas
Ana two of the legatees and devisees under the will of Antone
Phillips, deceased, upon a showing that A. S. Cleghorn, Esquire,
administrator with the will annexed, has filed no accounts of his
administration since March 31st, 1877, moved this court for an
order requiring him to file his accounts. This motion was con-
tested by the administrator and after hearing evidence the court
on December 16th, 1898, granted the motion and ordered the
administrator to file his accounts.

On April 11, 1899, the administrator filed an account showing

that on September 18, 1886, he had in his hands the sum of $3520.69 principal and income of the estate, and upon April 17, the legatees and devisees above named and Koleka, widow of Antone Manuel, deceased, another of the legatees and devisees made the motion, now under consideration, for an order requiring the administrator to pay into court said sum of $3520.69 and interest for their use and benefit.

This motion is opposed by the administrator who claims in his account above referred to that in September, 1886, he paid this amount of $3520.69 into the hands of one W. R. Castle, Esquire, an attorney at law at the request, as he claims, of the above mentioned legatees and devisees, movants, and one Ana Momona, the life-tenant of the estate. He claims that by this transfer the administration was closed and his liability ended, and that the parties to the motion are estopped from requiring him to account to them for the property thus transferred.

The movants deny that they ever authorized, requested or assented to the transfer of the trust by the administrator to said Castle either expressly or inferentially, and that such transfer, was made, if made at all, wholly without their knowledge or consent, and they further deny that they have at any time received any part of the property coming to them under the will.

On October 19th, 1885, Ana Momona, the life-tenant, by her attorney, the said W. R. Castle, petitioned the Supreme Court for the removal of Mr. Cleghorn as administrator. The record shows that no one appeared to prosecute this petition and no further proceedings were taken in court, and as the record shows Mr. Cleghorn was never discharged but is still administrator of the estate.

During the month of September, 1886, I find from the evidence that the administrator did, as set forth in his account transfer to Mr. Castle the amount of $3520.69, being cash $1620.69 and certain land belonging to the administrator, situated at Waihee, Maui, being taken by Mr. Castle in lieu of $1900 cash. Some years later Mr. Castle in turn transferred the property of the estate to Antone Rosa, an attorney at law, as a quasi trustee.

I am of the opinion that if the administrator could show by clear and undisputable evidence that the legatees and devisees who are now moving in this matter requested such a transfer to be made and fully assented to it, or afterwards ratified the same, they would now be estopped from demanding an accounting from the administrator even though he had never received his discharge from the court. The question then is:—Did these

parties now before the court authorize or consent to the transfer to Mr. Castle or was it afterwards ratified by them, so that it can now be held that they are estopped from proceeding further against the administrator? In arriving at a decision of this question it must be remembered that the burden of proof is upon the administrator to establish the estoppel. It must be shown upon a preponderance of proof that these parties now moving did authorize the transfer at the time it was made or that they subsequently ratified it. Upon a careful review of the evidence introduced I am not satisfied that either the authorization or subsequent ratification of the transfer of the estate to Mr. Castle by the movants has been proved by the administrator, and I accordingly am unable to find that the movants are estopped in these proceedings.

The administrator Mr. Cleghorn personally had no communication with the parties interested in the estate. As Mr. Castle instituted the proceedings against him on behalf of the life-tenant he dealt with him alone, and trusted in his doing everything that was necessary to effectuate the termination of his obligation as administrator, and in fact has always since the date of the transfer up to the institution of the present proceedings considered that he was discharged. Mr. Castle was the principal witness for the administrator and it is on his evidence mainly that the court is asked to find that these parties are estopped. His testimony is in my opinion insufficient to justify the court in arriving at such a conclusion. His recollection of the circumstances which surrounded the transfer to him in 1886 is very indistinct and vague, and cannot supply the place of the clear, unequivocal evidence of an estoppel that the law requires.

A few extracts from his reported testimony will serve to show the unreliability of his evidence. He testifies (page 5 Sten. Notes) that the remainder-men 'never consented either way to my knowledge—never consented to it (the estate) being paid over to me or to my handing it over to Antone Rosa. I don't remember I had anything to do with either of them. * * * * That man (John Ana) came into my office sometime *after I paid the thing* into the hands of Antone Rosa as I now recollect. Of course, he may have come there before, I won't say he did not.' Again (p. 7) on being asked by Mr. Robertson, counsel for the administrator, 'Q. As a matter of fact don't you remember that the remainder-men did consent to Mr. Cleghorn transferring the property of the estate to you?' he answered 'No, I don't.' The deed of the land at Waihee to Mr. Castle contained the recital

'Whereas, parties in interest under said Estate consenting that certain real property below named be conveyed as a portion of the trust estate.' It was drawn by Mr. Castle and on his attention being called to it he testified that he had no doubt as to the correctness of the recital. On being asked whether the 'consent' referred to, was the consent of the remainder-men he answered (p. 9) 'It must. I presume it as a fact. I don't remember seeing about it.' Again (p. 10) 'I cannot say from my recollection now whether they knew or appreciated the fact, if it was a fact, that I was going to take Mr. Cleghorn's place. I cannot remember about the remainder-men. I don't remember seeing them, though it is likely I must have seen them   *   *   *   I have an indistinct recollection of his (John) coming once with a brother or cousin (the other Ana).'  (p. 13) 'My recollection is that the two Anas came.' On being asked (p. 16) whether he was acting 'without authority from the boys?' He replied, 'I cannot remember about that. The recital in the deed does not bring it to my mind.' Again, (p. 16) 'I don't even recollect that they agreed that I was to hold the property'   *   *   *   (p. 17) 'It looks as though it was consented that I was acting as trustee. I don't recollect that.' In reply to the court the witness (p. 29) testified that he recollected that the Anas consented to his transferring the estate to Rosa, but (p. 30) he says emphatically 'I dare not say beyond the deed that they consented that I should take charge as trustee. I don't remember that. I could not recollect that and will not swear that they did then and there agree that I should act as trustee of the estate.' In answer to the question, Did they know that you were going to turn it over to Antone Rosa until you did? he replied, 'I think they did. I wouldn't want to swear to it.'

Such was the nature of the testimony on the first day of the hearing: on the next day the witness was more positive that the remainder-men consented and acquiesced, but I think that the sum and substance of his later testimony is to the effect that they must have known both of the transfer to himself and later to Mr. Rosa because he is certain that he did not and would not make any change in the principal without consulting those concerned in it.

See pages 44, 47, 73, 75, 76. The foregoing evidence was taken June 21 and 23, 1898, and one year later June 10, 1899, Mr. Castle testified and on this occasion stated that the vagueness had then left his memory and that the two Anas and Koleka,

widow of Antone Manuel, requested him to turn the estate to Mr. Rosa.

Mr. Rosa testified that one of these parties John Ana came to him and wished to have him take the property from Mr. Castle, but that the other Antone, was working at Eleele, Kauai, at the time: further that they told him that Mr. Cleghorn's connection with the estate had ended. He testified that he didn't remember whether he had ever acted for Koleka, widow of Antone Manuel, or whether she had ever spoken to him on the subject.

Each of the movants testified that they never authorized or had any knowledge of the transfer of the estate and never in any way consented to it. It may be that they did have some knowledge of the various transactions in connection with the estate, but the evidence of their authorization or ratifications of either of the transfers is not sufficiently certain and free from doubt to enable the court to find such to be proven by a preponderance of the evidence. An administrator appointed by the court acts in the capacity of a trustee and his conduct of the estate should be closely scrutinized; it is only by a very clear showing that he can be relieved from the responsibility and the obligation to account, and any doubts should be resolved in favor of the remainder-men or cestuis que trust.

The motion calls for an order requiring the payment into the court of the sum of $3520.69 with legal interest from the 30th day of June, 1877. According to the administrator's account filed April 1st, 1899, $3478.14 was the value of the corpus of the estate in June, 1877, and this is all that the remainder-men have any interest in. The income from that fund belongs to the life-tenant and with it the remainder-men have no concern. I therefore grant the motion and order the administrator to pay into court the said sum of $3478.14.

In conclusion, in justice to the administrator Mr. Cleghorn, it should be said that in transferring the estate to Mr. Castle he acted in good faith, desiring to be relieved of the responsibility of the administration, relying upon Mr. Castle, considering that when he parted with the property his connection with the estate was legally severed."

We also find from the evidence that the transfer of the property by Castle was as follows: Castle transferred to Rosa part of the estate consisting of several notes secured by mortgage and some money altogether not exceeding $1500; the real estate Castle deeded direct to Ana Momona (the life tenant) subject to

the trusts: Castle retained a note and mortgage for some $400 in his hands which he later collected, but instead of turning it over to Rosa, he pays it over to one Dement as agent or attorney in fact of Ana Momona.

Such transactions are certainly against the theory of consent and ratification by the remaindermen, and also the testimony of Rosa shows that he was acting as attorney for Ana Momona in seeking to have the property transferred to him by Castle.

The decree appealed from is confirmed and the appeal dismissed.

*Humphreys & Gear* for movants.

*Robertson & Wilder* for the administrator.