*Achi & Johnson* for defendant.

---

A. S. CLEGHORN, Administrator with the Will annexed of the Estate of Antonio Philip, deceased, *v.* W. R. CASTLE, JOHN NICHOLAS ANA, ANTONIO NICHOLAS ANA, KOLEKA and MARY BROWN.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 5, 1900.        DECIDED DECEMBER 4, 1900.

FREAR, C.J., AND PERRY, J.

In consequence of a misrepresentation, though innocent, made by C. to the effect that the remaindermen as well as the life-tenant under a will of certain property, desired the transfer and conveyance of such property by A. S. C., the administrator with said will annexed of the estate of the testator to C., and that thereupon A. S. C's. liability as such administrator would terminate, A. S. C., to whom the representation was made, relying thereupon, transferred and conveyed all of said property as requested. It subsequently appeared, by decree of court, that the remaindermen had not in fact consented to such transfer and conveyance or ratified the same, and the administrator was ordered to pay to the remaindermen the amount of the principal of said estate.

Held, that the administrator may recover of C. the property so transferred and conveyed.

Held, that it is no defense to the suit that C., who, in requesting the administrator to transfer and convey the property, acted as the attorney of the life-tenant, had, prior to the demand by the administrator for a restoration of the property, transferred and conveyed it to the life-tenant and to certain other parties subject to the same trusts, and that the facts do not bring the case within the rule that where a voluntary payment is made under a mistake of law to an agent for his principal, the agent cannot be held liable if, prior to the receipt of any demand or notice to the contrary, he has paid the money to his principal.

### OPINION OF THE COURT BY PERRY, J.

One Antonio Philip, late of Honolulu, Oahu, died in the year 1859, leaving a will wherein and whereby he bequeathed the whole of his estate to his widow Anna (also known as Ana Momona) for life and provided that at her death it be divided as follows: to George Friel one fourth, to John Nicholas Ana one fourth, to Antone Nicholas Ana one fourth and to Antone Manuel one fourth. The will was duly admitted to probate on November 30, 1859, and on the 28th of March, 1870, complainant was appointed administrator with the will annexed of the decedent's estate.

In September, 1886, respondent Castle, as the attorney for the widow, and taking this action in consequence of financial embarrassment under which Cleghorn was laboring at the time, requested the latter to transfer to him all of the funds and property of the estate to be held by him, Castle, under the same trusts, representing to Cleghorn not only that the widow desired this course to be followed but also that the other devisees joined in the request for the transfer. Castle further represented to Cleghorn that upon the latter's so transferring the property, his liability as administrator would terminate.

Cleghorn, believing in the truth of these representations and relying thereupon, paid and delivered over to Castle all of the funds and property of the estate remaining in his possession, that is to say: cash, $1033.48, two promissory notes signed by himself, one for $461.52 and one for $125.69, and, by deed, a lot of

land situate at Waihee, Maui, $1900., being in all the sum of $3520.69 or its agreed equivalent, of which sum $3400. was principal and the balance income. (See exhibit "A" filed June 28, 1898, Probate Record No. 1138.) It was at the time known to and understood by both Cleghorn and Castle that the land at Waihee was of the value of much less than $1900. but nevertheless it was accepted by Castle as the equivalent of that amount because Cleghorn had no other property and it seemed wise to accept all that could be had. In an informal interview, the probate judge familiar with the proceedings theretofore had concerning the estate, had said to Castle that he considered the proposed acceptance of the land at that value as wise under the circumstances. It is due to Mr. Castle that this fact be noted.

In the negotiations, Castle represented to Cleghorn that all the parties in interest consented that the land be taken as of that value, and Cleghorn relied upon this representation also in making the conveyance.

Thereafter, upon the request of the life tenant and some of the other devisees, Castle conveyed to Ana Momona the land at Waihee, subject to the same trusts expressed in the will and delivered over into the care of the late Antone Rosa, who was then the attorney of said Ana Momona, the sum of $1100. and into that of one C. R. Dement the attorney-in-fact for Ana Momona the sum of $400. The land was subsequently conveyed by Ana Momona to Ana Momona, Jr., in whom the title is said to be now vested.

Ana Momona died on January 28, 1897. In June, 1898, John Nicholas Ana and Antone Nicholas Ana, two of the devisees above referred to and Koleka, widow of Antone Manuel, a third devisee, instituted certain proceedings before a Circuit Judge of the First Circuit in the matter of the estate of said decedent, which proceedings resulted in the finding by the court that the transfer in 1886 had been made without the consent of or subsequent ratification by the said movants and in a decree holding Cleghorn liable as Administrator for all of the property of the estate and ordering him to pay into court for the benefit

of those entitled thereto the sum of $3420. and interest thereon from January 28, 1897. On appeal, the findings and decree of the Circuit Judge were sustained by this court. For a full statement of the facts bearing upon the issues then before the court, see the decision which is reported in 12 Haw. 284 et seq. The evidence in that case has been, by stipulation, made evidence in this case, and some additional testimony has been taken. Upon all the evidence now before us we make the same findings as were made in the former case so far as the same are relevant or necessary in this case and especially on the subject of the consent and ratification of John and Antone Nicholas Ana.

Castle in making the statements which he did in 1886 to Cleghorn concerning the consent of the devisees to the transfer, acted in good faith, believing that the transfer did meet with their approval and consent. Nevertheless the statement was incorrect and in that sense a misrepresentation of a fact upon which Castle could and should have fully informed himself. Cleghorn believed and relied upon the representations, and continued in ignorance of the truth of the matter until the termination of the former proceedings last mentioned. Very soon after the rendering of the decision of this court on that matter, he filed the bill of complaint in this case, averring in substance most of the facts above set forth and praying that Castle be ordered to reconvey to him the land at Waihee or to pay the sum of $1900. in lieu thereof and to account for and pay all of the funds transferred to him by complainant amounting in all to the sum or value of $3420. with interest thereon from January 28, 1897. A general prayer for relief is added. John and Antone Nicholas Ana, Koleka and Mary Brown, widow of George Friel, another of the devisees, were also made parties defendant. Mary Brown demurred on the ground of misjoinder of parties defendant and the court below held that she had been improperly joined. None of the other respondents except Castle filed any answer or other pleading or made any appearance.

The court below decreed that the respondent Castle pay to the complainant the sum of $3420. with interest thereon from Jan-

uary 28, 1897. From that decree the case now comes to this court on the appeal of the principal respondent.

The defense mainly relied upon is that this was a voluntary payment by the administrator to the agent of the life-tenant, for his principal, made under a mistake of law, and that the agent cannot now be held liable because long prior to the receipt by him of any notice to the contrary he paid and delivered over the property to his principal; and that the administrator's remedy is by seeking the trust property wherever it may now be.

We are of the opinion that the case at bar is not within the principle of the cases cited by the respondent in support of that contention. In making the suggestion or request to complainant that all of the property of the estate be transferred to respondent, the latter acted, no doubt, as the agent of the life-tenant, but in receiving and holding the property he acted, not as such agent, but as a trustee for the benefit of all the beneficiaries named in the will; he held the property, not only in order to pay the income thereof to the life-tenant, but also to preserve the principal for the remaindermen and to distribute it among the latter at the time and in the proportions provided for by the will. The deed of August, 1886, from Cleghorn to Castle (referring to the administration of the estate of the decedent) recites that the grantor "is now desirous of surrendering the said trust, and said grantee has now consented to assume the same," and in its habendum declares the property to be conveyed "in trust nevertheless to the following uses and purposes, that is to say, during the lifetime of Ana Momona widow of said Antonio Philip to pay over to her all the net rents issues and profits thereof and at her death to convey the same to the heirs and persons who may be so declared by the court to be entitled thereto."

The grantee assumed all of the duties and responsibilities of a trustee under the will. Castle himself recognized this, for he declined, as was his duty to do, either to allow Ana Momona to encroach on the principal or to divide the property at the request of the remaindermen and Ana Momona, his alleged principal (see paragraph 8 of answer, and page 5 of Castle's evidence of

June, 1899) and it was in consequence of this refusal that Ana Momona became dissatisfied and finally prevailed upon Castle to hand over the property to others; this he did still charging it with the same trusts. This cannot be held to have been a payment to his principal. The property excepting only the income for life, as to which there is now no dispute, did not belong to the life-tenant or principal, and was not regarded or treated by the respondent as belonging to her. The will provided: "I give & bequeath to the son of my deceased friend Nicholas Anna, who resides with me, one quarter of my estate—to George Friel the son of another deceased friend George Friel who resides with his mother one quarter of my estate—To Antone Manuel the son of my friend Manuel Sers one quarter of my estate—to Antone Nicholas Anna, another son of my deceased friend, one quarter of my estate, for all of whom I stood God Father at their baptism. I do hereby nominate and appoint my friend Edward Brown of Honolulu, Executor of this my last Will and Testament and invest him with full power and authority to take charge of and manage my Estate for the use and benefit of the Legatees herein named and finally to distribute the same to the Legatees who are to receive the remainder after my wife's decease, upon their severally becoming of age." The respondent was familiar with these provisions, and did not intend to cause the property to go to any person other than as specified in the will, though, it must be said, he would seem to have acted negligently in permitting the corpus of the estate to be scattered in the manner shown by the evidence and stated above.

The deed of the land and the transfer of the funds was made, not solely through a mistake of law but through a mistake of fact caused by the misrepresentation, though innocent, of the respondent of matters upon which he could easily have informed himself. The complainant might, it is true, have pursued the trust property wherever the same was to be found, but, on the other hand, he may elect to look solely to the person with whom he dealt, and in consequence of whose representations he parted with the trust estate.

No laches can be imputed to the complainant, for he instituted proceedings promptly upon first ascertaining, by the decree of the court, that the facts as to the consent of the remaindermen were otherwise that he had been led by the respondent to believe that they were.

The fact that the title to the land is not now in the respondent, is urged by the complainant as a reason why he should be decreed to pay the whole principal of the estate in cash and not to reconvey the land, since it would not be in his power to make such a reconveyance, or in that of the court to compel performance of its decree. The prayer of the bill is for a reconveyance, or, in the alternative, payment of the sum of $1900. In view of the circumstances above stated which surrounded and led up to the conveyance by Cleghorn and its acceptance by Castle at the valuation of $1900., we are of the opinion that justice requires that respondent be given an opportunity to reconvey the land or cause its reconveyance as representing the sum of $1900. If, however, he is unable to do so, he should be decreed to pay the $1900. as well as the balance of $1520. in cash; and, in any event, complainant is entitled to interest on the whole sum of $3420. from the 28th day of January, 1897.

The case is remanded to the Circuit Judge of the First Circuit with instructions to enter a decree and to take such further proceedings as may be necessary in accordance with the foregoing views.

*Robertson & Wilder* for complainant.

*P. L. Weaver* for respondent Castle.